**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| SEANDRA DANIEL, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>ROSE INTERNATIONAL, INC.; VERIZON COMMUNICATIONS, INC.; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.: 4:26-cv-00332<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMANDED** |

Plaintiff Seandra Daniel brings this Collective and Class Action Complaint against Defendants Rose International, Inc., Verizon Communications, Inc., and DOES 1 through 10 (collectively, "Defendants") and states as follows:

## INTRODUCTION

1. This is a collective and class action brought by Plaintiff on behalf of herself and all similarly situated current and/or former Customer Service Representatives, Customer Service Associates, Collections Representatives, Customer Support Technicians, Contact Center Outbound Schedulers, Customer Care Representatives, and/or other job titles performing the same or similar job duties (collectively "CSRs"), as employees of Defendants to recover for Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Missouri Minimum Wage and Hour Law ("MWHL"), Mo. Stat. §§ 290.500, *et seq.*, and other appropriate rules, regulations, statutes, and ordinances.

2. The U.S. Department of Labor recognizes that call center jobs, like the one held by Plaintiff, are homogenous and issued guidance to alert and condemn an

employer's non-payment of an employee's necessary boot-up and call ready activities. *See* DOL Fact Sheet #64, attached hereto as Exhibit A at 2 ("An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."). Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

3. Defendants subjected Plaintiff, and those similarly situated, to Defendants' policy and practice of failing to compensate their call center employees for their necessary boot-up and call ready work, which resulted in the failure to properly compensate them as required under applicable federal and Missouri state law.

4. Plaintiff seeks a declaration that her rights and the rights of the FLSA Collective, and the rights of the putative Missouri Class, were violated. She seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys' fees and costs, pre- and post-judgment interest, and any other remedies to which she and the putative FLSA Collective and Missouri Class may be entitled.

## **JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

6. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

7. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

8. Upon information and belief, Defendants' annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

9. Defendants' employees, including Plaintiff, engage in interstate commerce including but not limited to utilizing telephone lines and the Internet. Therefore, they are also covered by the FLSA on an individual basis.

10. This Court has personal jurisdiction over Defendant Rose International because it is a resident of Missouri and maintains offices in the state.

11. This Court has personal jurisdiction over Defendant Verizon because it purposefully availed itself of the state by maintaining offices and employing people in the state and Plaintiff's claims arise out of Verizon's employment of her in the state.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Rose International resides in this District and Defendants Rose

International and Verizon are both subject to the Court's personal jurisdiction in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

13. Plaintiff is an individual who resides in St. Louis County, Missouri. Plaintiff worked for Defendants as a CSR from June 2024 to August 2024. Plaintiff executed her Consent to Sue form, attached as Exhibit B.

14. Defendant Rose International is a Missouri corporation with its principal place of business in Missouri.

15. Defendant Verizon is a Delaware corporation with its principal place of business in New York. "Verizon" shall be understood to include Defendant Verizon's predecessors, successors, assigns, parent companies, subsidiaries, affiliates, and their respective officers, directors, employees, and agents.

16. Defendant Rose International is a recruiting and consulting firm which provides staffing, customer service, and talent services to corporate clients. *See* Rose International, *About Rose International*, https://www.roseint.com/AboutRose.html (Feb. 16, 2025).

17. Defendant Rose International employs CSRs nationwide, including in Missouri, Arizona, California, Illinois, Iowa, New York, North Carolina, Tennessee, and Texas. *See* Job Postings, attached hereto as Exhibit C.

18. Defendant Verizon is a Fortune 500 company which provides millions of customers with mobile and wireless networking services. *See* Verizon, *Verizon Fact Sheet*, https://www.verizon.com/about/our-company/verizon-fact-sheet (Feb. 16, 2026). Verizon contracts with Rose International to staff its call centers.

19. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise of Does 1 through 10, inclusive, are unknown to Plaintiff who therefore sues Defendants by such fictitious names. The full extent of the facts linking these fictitiously sued Defendants is unknown to Plaintiff. Plaintiff is informed and believes, and alleges, that each of the Defendants designated in this Complaint as Doe was, and is, liable for the events and happenings referred to in this Complaint, and therefore, legally caused the described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the Defendants' true names and capacities after they have been ascertained.

20. Defendant Rose International may accept service via its registered agent Cogency Global Inc. at 406 N. Main St., Ste. B, Rolla, Missouri 65401.

21. Defendant Verizon may accept service via its registered agent C T Corporation System at 28 Liberty St., New York, New York 10005.

## JOINT EMPLOYERS

22. Defendants jointly employed Plaintiff and CSRs as defined in the FLSA. *See* 29 C.F.R. § 791.2.

23. Upon information and belief, Defendants engaged in a joint venture, partnership, and common enterprise, and at all relevant times, acted within the

course and scope of, and in pursuit of said joint venture, partnership, or common enterprise in employing CSRs to perform work for Defendants' benefit.

24. Upon information and belief, Defendants jointly set the terms and conditions of employment for CSRs and CSRs work for the benefit of Defendants' joint venture, partnership, and common enterprise.

25. Upon information and belief, Defendants jointly possessed the ability to hire and fire CSRs.

26. Defendant Rose International provided staffing, in the form of its CSRs, to Defendant Verizon's call centers.

27. Upon information and belief, Defendants jointly had the authority to set and/or communicate conditions of employment for CSRs, including compensation and work hours of CSRs.

28. Upon information and belief, Defendants jointly maintained employment records for CSRs.

29. Defendants' joint venture, partnership, and common enterprise included employing CSRs for the purpose of operating Verizon's telecommunication system to provide service to Verizon's customers.

30. Defendant Rose International hired CSRs and supplied their labor by contract to Verizon. Defendant Verizon subsequently provided CSRs with the necessary equipment to complete their call center responsibilities, trained CSRs at its physical call centers, supervised CSRs, and mandated CSRs' responsibilities and objectives.

31. Defendants jointly assign CSRs to perform work on behalf of their joint venture, partnership, and common enterprise regardless of the entity that pays the employee.

## GENERAL ALLEGATIONS

32. Rose International employed Plaintiff as an hourly CSR. Rose International assigns CSRs like Plaintiff to provide call-in support to customers of Rose International's clients.

33. Plaintiff's primary job duties as a CSR included answering calls from customers of Rose International's client, Verizon. Specifically, she helped Verizon's customers initiate internet and landline phone service.

34. Throughout Plaintiff's employment with Defendants, Plaintiff regularly worked at least 40 hours per workweek.

35. Regardless of whether Defendants scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of her job duties as a CSR. Defendants never compensated Plaintiff for this necessary time worked off-the-clock.

36. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### *A. Unpaid Boot-Up and Call Ready Work.*

37. Defendants tasked Plaintiff with providing customer service by use of Defendants' telephone system and Defendants' computer programs.

38. To access Defendants' systems, Plaintiff, and all other current and/or former CSRs, must turn on or wake up their computers, enter their credentials, and then log in to multiple computer programs, servers, and applications. Once this boot-up and call-ready work is completed, Plaintiff, and all other current and/or former CSRs, must log in to Defendants' phone system to take their first call at their scheduled shift start time.

39. Defendants did not compensate Plaintiff, and all other current and/or former CSRs, until they clocked into the timekeeping program only accessible through Defendants' computer programs.

40. The boot-up and call ready work regularly takes 20 minutes, or more if technical issues arise. Defendants did not compensate Plaintiff for this time.

41. Regardless of how long the boot-up and call ready work takes, Defendants did not allow Plaintiff, and all other current and/or former CSRs, to clock in before completing all of the boot-up and call ready work.

42. The boot-up and call ready work Plaintiff, and all other current and/or former CSRs, must complete before they begin being compensated is the same regardless of where they worked.

43. The boot-up and call-ready procedure is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendants' business.

44. Thus, the unpaid boot-up and call ready work performed by Plaintiff, and all other current and/or former CSRs, directly benefits Defendants.

### ***B. Defendants' Policy and Practice of Off-the-Clock Work Violates Federal and Missouri Law.***

45. At all relevant times, Defendants suffered or permitted Plaintiff, and all other current and/or former CSRs, to routinely perform off-the-clock boot-up and call ready work by not compensating their employees until after they completed the boot-up and call ready procedure.

46. Defendants knew or should have known that they must pay their employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

47. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CSRs, for their compensable boot-up and call ready work performed in any amount.

48. Defendants knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendants to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable boot-up and call ready work performed.

49. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former CSRs, for their boot-up and call ready work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

50. Defendants are aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendants' own payroll records reflect the number of hours it paid Plaintiff.

51. Defendants are aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendants' own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was approximately $16 per hour.

52. Defendants knew or should have known that Missouri wage and hour laws require an employer to pay employees wages for each hour worked. *See* Mo. Stat. § 290.502(3). Defendants knew or should have known that Missouri wage and hour laws require an employer to pay non-exempt employees at rate one and a half times their regular wages for each hour worked beyond 40 hours in a single workweek. *See* Mo. Stat. § 290.505(1).

53. Despite this, Defendants failed to compensate Plaintiff, and all other current and/or former hourly CSRs working in Defendants' call center for their compensable boot-up and call ready work performed in workweeks totaling in excess of 40 hours at the proper rates, including overtime premiums.

54. In reckless disregard of the FLSA and Missouri wage and hour laws, Defendants adopted and then adhered to its policy, plan, or practice of employing

Plaintiff, and all other current and/or former CSRs, to perform compensable boot-up and call ready work off-the-clock. This illegal policy, plan, or practice caused incorrect payments for all overtime performed by Plaintiff, and all other current and/or former CSRs, in violation of the FLSA and Missouri wage and hour laws.

***C. Recordkeeping.***

55. The Missouri wage and hour laws require that "[e]very employer subject to any provision of [the MWHL] or any regulation issued under [the MWHL] shall make and keep for a period of not less than three years on or about the premises wherein any employee is employed or at some other premises which is suitable to the employer, a record of the name, address and occupation of each of his employees, the rate of pay, the amount paid each pay period to each employee, the hours worked each day and each workweek by the employee and any goods or services provided by the employer to the employee." *See* Mo. Stat. § 290.520.

56. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

57. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

58. Upon information and belief, Defendants failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff

as required by the FLSA because it failed to include the off-the-clock boot-up and call ready work on Plaintiff's and all other current and/or former CSRs' payroll records.

59. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

60. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

61. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Customer Service Representatives, Customer Service Associates, Collections Representatives, Customer Support Technicians, Contact Center Outbound Schedulers, Customer Care Representatives, and/or other job titles performing the same or similar*

> *job duties (collectively "CSRs"), who worked for Rose International, Inc. on behalf of Verizon Communications, Inc. and/or DOES 1 through 10, at any time in the last three years.*

("FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

62. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

63. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the call center employees described are "similarly situated" to Plaintiff. The collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendants' practices, policies, or plan of not paying its CSR employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendants and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

64. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former call center employees over the relevant period, will include several hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of

Defendants' personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

65. Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

**CLASS ACTION ALLEGATIONS**

66. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Missouri Class defined to include:

> *All current and former Customer Service Representatives, Customer Service Associates, Collections Representatives, Customer Support Technicians, Contact Center Outbound Schedulers, Customer Care Representatives, and/or other job titles performing the same or similar job duties (collectively "Customer Service Representatives" or "CSRs"), who worked for Rose International, Inc. on behalf of Verizon Communications, Inc. and/or DOES 1 through 10, at any time in the last three years.*

("Missouri Class"). Plaintiff reserves the right to amend this definition as necessary.[1]

67. *Numerosity:* The members of the Missouri Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The precise number of

[1] Plaintiff specifically reserves the right to amend the definition and/or include subclasses related to whether an employee worked in a physical call center, remotely, or in a hybrid environment.

members of the Missouri Class should be readily available from a review of Defendants' personnel and payroll records.

68. *Commonality/Predominance:* There is a well-defined community of interest among members of the Missouri Class and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Defendants violated the MWHL by failing to pay current and former employees for all wages earned;

b. Whether Defendants violated the MWHL by failing to make, keep, and preserve true and accurate payroll records; and

c. Whether Plaintiff and the Missouri Class were damaged.

69. *Typicality:* Plaintiff's claims are typical of those of the Missouri Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from Defendants' same policies, practices, and course of conduct as all other claims of members of the Missouri Class and Plaintiff's legal theories are based on the same legal theories as all other members of the Missouri Class members: whether Plaintiff and the Missouri Class were not paid for all wages earned as a result of Defendants' failure to pay for boot-up and call ready work.

70. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Missouri Class and Plaintiff retained counsel who are qualified and experienced in

the prosecution of wage-and-hour collective and class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Missouri Class.

71. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, it is economically infeasible for members of the Missouri Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual. Given the material similarity of the claims of members of the Missouri Class, even if each class member of the Missouri Class could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds of identical actions. Individual litigation of the legal and factual issues raised by Defendants' conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Proceeding by way of a class action would permit the efficient supervision of the putative Missouri Class claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

72. The case will be manageable as a class action. Plaintiff and her counsel know of no unusual difficulties in the case and Defendants' payroll systems will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule

entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

**COUNT I**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES (FLSA Collective)**

73. Plaintiff individually and on behalf of the proposed FLSA Collective, re-alleges and incorporates by reference the above paragraphs.

74. At all relevant times, Defendants were each an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

75. Defendants were engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

76. At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

77. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

78. The positions of Customer Service Representatives, Customer Service Associates, Collections Representatives, Customer Support Technicians, Contact Center Outbound Schedulers, and Customer Care Representatives are not exempt from the FLSA.

79. Defendants' other job titles performing similar call center job duties are not exempt from the FLSA.

80. At all relevant times, Defendants "suffered or permitted" Plaintiff to work and thus "employed" her within the meaning of the FLSA, 29 U.S.C. § 203(g).

81. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

82. Defendants violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

83. Upon information and belief, Defendants have corporate policies of evading overtime pay for their hourly workers.

84. Defendants' violations of the FLSA were knowing and willful.

85. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated CSRs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to CSRs, or other job titles performing the same or similar job duties, who have worked or are working for Defendants in the same or similar position as Plaintiff.

86. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the FLSA Collective.

87. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

## VIOLATION OF THE MISSOURI MINIMUM WAGE AND HOUR LAW
**Mo. Stat. §§ 290.500, *et seq.***
**(Missouri Class)**

88. Plaintiff, individually and on behalf of the proposed Missouri Class, re-alleges and incorporates by reference the above paragraphs.

89. Defendants at all relevant times were each an employer within the meaning of Mo. Stat. § 290.500(4). Plaintiff and the Missouri Class are employees within the meaning of Mo. Stat. § 290.500(3).

90. The Customer Service Representatives, Customer Service Associates, Collections Representatives, Customer Support Technicians, Contact Center Outbound Specialists, Customer Care Representatives, and/or other job titles performing the same or similar job duties are not exempt under the MWHL.

91. Mo. Stat. § 290.502(3) requires employers to pay employees minimum wages for all hours worked. Mo. Stat. § 290.505(1) requires employers to pay employees one and a half times their regular rate for all hours worked over 40 hours per workweek.

92. Defendants violated the MWHL by failing to properly compensate Plaintiff and the Missouri Class for the actual time they worked each week. Defendants additionally violated the MWHL for failing to pay overtime pay for the hours worked by Plaintiff and the Missouri Class over 40 hours each workweek.

93. None of the provisions of the MWHL can be contravened, set aside, abrogated, or waived by Plaintiff or the Missouri Class.

94. Mo. Stat. § 290.520 additionally requires employers to maintain accurate records of all hours worked by employees.

95. Upon information and belief, Defendants failed to maintain accurate records of all of the hours worked by Plaintiff and the Missouri Class and therefore violated the MWHL.

96. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Missouri Class have suffered damages in an amount to be determined at trial.

97. If any employee is paid by their employer less than the wage to which they are entitled under the provisions of the MWHL, the employee may recover "the full amount of the wage rate and an additional amount equal to twice the unpaid wages as liquidated damages, less any amount paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury." Mo. Stat. § 290.527.

98. Plaintiff and the Missouri Class seek damages as set forth in Mo. Stat. § 290.527 and such other legal and equitable relief as the Court deems proper.

## PRAYER FOR RELIEF

Plaintiff requests the following relief:

a. An Order authorizing notice to putative collective members in accordance with 29 U.S.C. § 216(b) and with respect to the FLSA claims set forth above;

b. An Order compelling Defendants to disclose in electronic or digital format, or in print if no electronic or digital readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under this litigation;

c. An Order certifying the Missouri Class pursuant to Fed. R. Civ. P. 23.

d. An Order designating Plaintiff to act as the Collective and Class Representative on behalf of the FLSA Collective and the Missouri Class;

e. An Order declaring that Defendants willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendants violated its obligations under the FLSA;

g. An Order declaring that Defendants violated its obligations under the MWHL as set forth above;

h. An Order granting judgment in favor of Plaintiff and the FLSA Collective against Defendants and awarding the amount overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the FLSA Collective's regular rate multiplied by all hours that Plaintiff and the Collective worked in excess of 40 hours per week;

i. An Order granting judgment in favor of Plaintiff and the Missouri Class against Defendants and awarding the amount of unpaid wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's and the Missouri Class's regular rate multiplied by all hours that Plaintiff and the Missouri Class worked in excess of 40 hours per week;

j. An Order granting judgment in favor of Plaintiff and the Missouri Class against Defendants and awarding the amount of unpaid straight-time wages calculated at Plaintiff's and the Missouri Class's regular rate of pay;

k. An Order awarding liquidated damages to Plaintiff and the FLSA Collective in an amount equal to the amount of unpaid overtime wages found owing to Plaintiff and the Collective under the FLSA;

l. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

m. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

n. An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Trent B. Miracle*

Trent B. Miracle #502102 (MO)
**FLINT COOPER COHN THOMPSON & MIRACLE**
222 E. Park Street, Suite 500
Edwardsville, IL 62025
Phone: (618) 288-4777
Fax: (618) 288-2864
Email: tmiracle@flintcooper.com

*Local Counsel for Plaintiff*

Alyson Steele Beridon #87496 (OH)*
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
600 Vine St., Ste 2720
Cincinnati, OH 45202
Ph: (513) 381-2224
Fax: (615) 994-8625
alyson@hsglawgroup.com

Jacob R. Rusch #0391892 (MN)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com

*Lead Attorneys for Plaintiff*

**Pro Hac Vice forthcoming*